Filed 10/4/24  P. v. Stevenson CA5
Opinion following rehearing after order to vacate previous opinion

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DARRYL STEVENSON, JR.,<br><br>Defendant and Appellant. | F086898<br><br>(Super. Ct. No. CF02671870)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Jonathan B. Conklin, Judge.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Peña, Acting P. J., Meehan, J. and Snauffer, J.

Appellate counsel for defendant Darryl Stevenson, Jr., has filed an opening brief summarizing the pertinent facts and raising no issues but asking this court to review the record independently. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) The opening brief also includes a declaration from appellate counsel stating defendant was advised of his right to file a brief of his own with this court. By letter dated June 20, 2024, we also invited defendant to submit additional briefing. Defendant filed a response to this invitation on September 11, 2024, which we accepted in an order issued on September 13, 2024.

This appeal comes to our court following a remand in *People v. Stevenson* (Dec. 29, 2022, F081656) [nonpub. opn.] (*Stevenson I*), requiring the trial court to conduct a new hearing on defendant's Penal Code[1] section 1172.6 petition for resentencing. Following a new evidentiary hearing on defendant's section 1172.6 petition, the trial court again denied the petition requesting resentencing.

Pursuant to *Wende*, *supra*, 25 Cal.3d 436 and *People v. Kelly* (2006) 40 Cal.4th 106, we have reviewed the entire record. Following our Supreme Court's direction in *Kelly*, we provide a brief description of the facts and the procedural history of this case. (*Kelly*, at p. 110.) Finding no arguable error that would result in a disposition more favorable to defendant, we affirm.

## BACKGROUND

On this court's own motion, we take judicial notice of our prior opinion in *Stevenson I*, *supra*, F081656 pursuant to Evidence Code sections 452, subdivision (d) and 459. We adopt relevant portions of the procedural and factual summary from this prior opinion:

---

[1] All further statutory references are to the Penal Code, unless otherwise specified.

"In April 2002, defendant drove John Shepheard to a location where Shepheard immediately engaged in a fight with Burnest Williams. After watching the fight for a while, defendant retrieved a handgun from a truck and pointed it at the head of K.R. K.R. alerted Williams that defendant had a gun. The fighting stopped, and Shepheard told defendant to put the gun down as he only wanted to fist fight. After defendant returned the gun to the truck, Williams started to fight with defendant. At this point, Shepheard retrieved the gun from the truck and fired two shots into the air, telling the crowd to 'back up.' Defendant and Shepheard then returned to the truck. As soon as defendant started the truck, he turned it around, jumped a curb, and started driving toward Williams and K.R. While K.R. was hit, he was able to run away. Williams, however, was pinned under the truck. Shepheard then reached out of the passenger side window with a gun and shot Williams four or five times. Williams died from the gunshot wounds.

"In January 2003, defendant was convicted of second degree murder after the jury was given an instruction utilizing the 'natural and probable consequences' doctrine. Defendant was eventually sentenced to 15 years to life for the second degree murder conviction and an additional year for a firearm enhancement, which would run consecutive to the main term.

"In 2019, defendant filed a petition with the trial court pursuant to section 1170.95[2] after legislative changes made it possible to challenge his conviction for second degree murder. After finding a prima facie case had been made on the petition, the trial court set the matter for an order to show cause (OSC) hearing, as contemplated by the statute.

"The OSC hearing was held on August 24, 2020. No new evidence was presented during the hearing, focusing instead on arguments made by both the People and defendant's counsel. The trial court stated it had reviewed the entire transcript of defendant's previous trial with the understanding that any findings he made in this proceeding could no longer include the concept of the 'natural and probable consequences doctrine.' The court noted, however, that the People still had the opportunity to present evidence 'to a standard of beyond a reasonable doubt the defendant could be found guilty in another way in this case as a direct aider and abettor.' The court further indicated this was not a felony-murder case and the People had to show defendant was a direct aider and abettor.

---

**2** Former section 1170.95, which was originally cited in our prior opinion, was renumbered as section 1172.6 without substantive change, effective June 30, 2022. (Stats. 2022, ch. 58, § 10.) As a result, we now cite only to section 1172.6.

"During this evidentiary hearing, the trial court continued to recognize that the evidence had to establish defendant was guilty beyond a reasonable doubt.…" (*Stevenson I*, *supra*, F081656.)

At the end of the hearing, however, the trial court specifically stated:

"[T]here is evidence from within the record *that the jury could conclude* beyond a reasonable doubt that [defendant] aided and abetted Mr. Shephe[a]rd with the specific intent that Mr. Shephe[a]rd kill the victim as was alleged. And, therefore, the petition is denied." (*Stevenson I*, *supra*, F081656.)

When considering defendant's appeal, we reviewed recent appellate court decisions addressing resentencing pursuant to section 1172.6 and legislative changes made to section 1172.6. As a result, we determined there was a need to remand defendant's case to the trial court to conduct a new hearing on defendant's section 1172.6 petition:

"While the court recognized the importance of finding evidence that a jury could rely on to find defendant guilty beyond a reasonable doubt of second degree murder as an aider and abettor, there is no clear indication in the record that the court understood its duty was to act as an independent fact finder. The trial court's repeated references to evidence the jury could have relied on to find defendant guilty beyond a reasonable doubt suggest the court concluded defendant could be found guilty of second degree murder under the new legal standard, as opposed to concluding the People proved beyond a reasonable doubt defendant was guilty of second degree murder." (*Stevenson I*, *supra*, F081656.)

Following the remand of this case, the trial court held a new hearing on the petition on August 8, 2023. In addition to the original trial transcripts and related evidence, new evidence introduced at the hearing by defendant included a recording of an interview with K.R., a participant in the 2003 incident that had recently been discovered, the testimony of another witness who was also present at the time, and defendant's testimony.

During the section 1172.6 hearing, defendant testified he drove to the site of the incident after Williams asked him to participate in a fight. When he arrived, a fight was

already in progress. While defendant admitted having a gun in his possession, he testified he did not plan to use it and never pointed the gun at anyone. Defendant claimed his intent was only to watch the fight, and not to participate. Despite this stated intent, defendant did actually engage in a fight after he was called out by others, causing him to put the gun in his truck before engaging in a new fight with Williams. Defendant stated when the fight was over he shook Williams's hand before he got into his truck to leave. However, when he heard gunshots, defendant knew police would arrive soon, so he made the decision to leave quickly. Because so many people were surrounding his truck, defendant testified he had to make a turn toward a driveway because he could not simply drive out straight. After hearing gunshots, defendant ducked and accidentally crashed into a fence. Defendant believed the shots were aimed at him. Defendant insisted he never "ran over" Williams.

During cross-examination, defendant admitted that he was in possession of a gun and that this testimony was in conflict with the testimony he provided at his trial when he stated he was not armed. Defendant suggested his testimony in the original trial was affected by a gang "culture" he was adhering to at the time. Defendant also recalled Shepheard, who was in the passenger seat of the truck, took his gun and shot Williams while he was between the truck and the fence. Defendant insisted he never "pinned" Williams between his truck and the fence.

Testimony was also provided by an acquaintance of defendant who was present when the fight occurred and Williams was shot. This witness offered testimony that many people surrounded defendant's truck as he tried to leave, and that he then observed the truck make a sharp turn. The testimony seemed to be offered to confirm certain aspects of defendant's own testimony. The recording of an interview with K.R. from 2002 was entered into evidence, and provided K.R.'s eyewitness recollection of the incident when Williams was shot. K.R. described the chaos of the events, saying numerous times that defendant "ran over" Williams, but that Shepheard shot Williams.

5.

The trial court took a little over a month to review all the evidence introduced at the hearing on defendant's petition, along with the transcript of the original trial. When issuing its ruling on September 12, 2023, the court noted it was acting as an independent factfinder and not commenting on what the jury could have found based on the evidence. Significantly, while summarizing the evidence that supported its findings, the court stated:

> "The Court finds there's clearly sufficient evidence to conclude—as this Court does independently—the Defendant is guilty of second degree murder beyond a reasonable doubt, as a direct aider and abettor, with specific intent to kill, without relying on a theory of felony murder or natural and probable consequences. [¶] … [¶]

> "The Court therefore concludes as a credibility determination, the Defendant's credibility and his claim that[] it was an accidental shooting were lacking, and therefore finds, again, to a standard of beyond a reasonable doubt, independently, that the Defendant committed the murder under an aiding and abetting theory. I've reviewed the jury instructions that are necessary to establish such a theory and find each was established beyond a reasonable doubt."

The court then denied defendant's petition for resentencing.[3] A notice appealing the denial of defendant's petition was filed on September 19, 2023.

On September 9, 2024, following our full review of the appellate record, we filed an opinion in this case concluding there were no arguable issues that should be addressed on appeal. On September 11, 2024, we received a brief from defendant responding to our letter of June 20, 2024, informing him of the filing of a *Wende* brief by appellate counsel. On September 13, 2024, by order of this court, we accepted the filing of defendant's brief and vacated the opinion issued on September 9, 2024, noting the issues raised by defendant would be addressed in a new opinion.

---

[3] After the trial court issued its ruling on defendant's section 1172.6 petition, the court allowed defendant to create a record that could potentially be important to a future hearing conducted pursuant to *People v. Franklin* (2016) 63 Cal.4th 261. That portion of the hearing does not raise any viable issues for an appeal at this time.

# DISCUSSION

Having carefully reviewed the entire record, we conclude there are no arguable issues on appeal. (*Wende*, *supra*, 25 Cal.3d at pp. 441–443.) However, we address the three issues raised by defendant in his brief to this court.

**I.     The Alleged Bias of the Judge Considering Defendant's Petition for Resentencing**

Defendant cites to two portions of the record on appeal to argue his due process right to a fair hearing under section 1172.6, subdivision (d)(3) was violated due to the expressed bias of the trial judge handling the petition for resentencing. The first instance cited by defendant occurred during a March 9, 2024, hearing during which the trial court was trying to select a date for a hearing on defendant's petition for resentencing. The specific passage at issue is as follows:

> "THE COURT: Now, this matter was remanded for a very specific purpose. This court made significant factual findings and determinations concerning the exercise of its discretion. The Fifth, upon review, has remanded it simply for the court to make the finding, if appropriate, rather—and this is a very—almost a word—a single word selection. Whereas the court, when it made its previous determination, determined that a jury could have found or would have found. The Fifth found that was insufficient. And this court needed to state clearly that this court finds— and that's my tentative. I am—I was very thorough in my prior determination. I do not fault the reviewing court. I understand they acted on a change in the law between the time that this court made its initial decision and the time that the review was granted. So I do agree that this remand was dictated by that change in the law.
>
> "But the court's tentative, once again, is to find that this court is finding as an independent factfinder beyond a reasonable doubt the defendant is guilty of murder under the valid theory of murder as is the current state of the law. But that's my tentative.

"I'll allow the chance for counsel to fully brief the issue if they feel there's anything more to be found. But I would direct them to the court's ruling at the prior hearing. [¶] … [¶]

"And, again, I'm perfectly willing to consider further argument. It's a court's tentative. I agree with [the prosecutor] that we need to reopen this for an entire new hearing. But on the other hand, at some time common sense has to prevail.

"We've had this hearing. The court has considered all the evidence available. The court made its ruling. All I've been asked to do now is readdress that ruling in light of a slight change in the law, which I will do at the May 15th hearing.

"But to say we need to open it up and, essentially, go through the proforma exercise of repeating the hearing that we previously had is— perhaps, I should stop. One might call it tilting at windmills but we're getting to that point."

The second passage noted by defendant occurred during a hearing held on April 18, 2024. At this time, the discussion centered on the type of hearing necessary to comply with the need for a completely new hearing, as the prosecutor eventually agreed, leading to the following exchange:

"[PROSECUTOR]: I understand what [defense counsel] is saying, and I want there to be a clear record. I don't want to have to do this a third time. I'm prepared today to submit Exhibit 1, the trial transcript, and do it again, and do it all over again if we must, and I'm confident the Court's gonna make the same finding it just made today if—you know, I think certainly the way [defense counsel] is—as—how shall I say— unnecessary as I think that it is to conduct a full—a whole new hearing, I think the way that [defense counsel] is reading the remittitur is—I mean, I would read it the way he's reading it, and I—

"[THE COURT]: That's fine. When do you want the hearing?

"[PROSECUTOR]: We have one set for the 15th,[4] Your Honor."

---

[4] The actual section 1172.6 hearing on the petition for resentencing was not held until August 8, 2023, with a decision to deny the petition issued on September 12, 2023.

8.

A party may seek to disqualify a judge if that judge exhibits a complete lack of impartiality, or there is the appearance of a lack of impartiality. (Code Civ. Proc., § 170.1, subd. (a)(6)(A)(iii).) However, a party claiming bias has a high hurdle to overcome, as the facts must objectively establish bias. (*People v. Chatman* (2006) 38 Cal.4th 344, 363.) Although actual bias is not required for judicial disqualification under the due process clause, the mere appearance of bias is also not sufficient. (*People v. Freeman* (2010) 47 Cal.4th 993, 996.) "Instead, based on an objective assessment of the circumstances in the particular case, there must exist ' "the probability of actual bias on the part of the judge or decisionmaker [that] is too high to be constitutionally tolerable." ' " (*Ibid*.) A due process violation will be found only in the exceptional case presenting extreme facts. (*Id*. at p. 1005.)

We note, defendant filed no challenge in the trial court to the impartiality of the judge hearing his petition for resentencing. "As a general rule, a specific and timely objection to judicial misconduct is required to preserve the claim for appellate review." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1320.) However, even if he had, we cannot conclude the record reveals any probability of actual bias or extreme facts constituting a constitutional violation of defendant's right to due process.

There is also no evidence defendant suffered any prejudice. Defendant received a completely new hearing where he was allowed to testify and provide additional evidence. Following our review of the entire record available to this court, we conclude defendant cannot overcome the high hurdle required to establish a claim of judicial bias.

II.     **The Alleged Failure to Consider Defendant's Youth**

Defendant next contends the trial court failed to consider his "youth" at the time the crime was committed and whether he was capable of forming the requisite mental state to be found guilty of committing second degree murder as a direct aider and abettor. To support his claim, defendant cites *People v. Pittman* (2023) 96 Cal.App.5th 400.

9.

In *Pittman*, following the denial of a section 1172.6 petition, the appellate court remanded so the trial court could consider the defendant's youth, which it had not made mention of in its prior decision denying the petition. The *Pittman* court rejected the People's argument that the issue was forfeited when such a challenge had not been preserved because "given the timing of the cases deciding that youth is a relevant factor bearing on mental state in section 1172.6 petitions, " 'it is unlikely … that the trial court [or the parties] could have known to consider [the defendant's] age and maturity level, particularly to the extent now required by cases issued after [the resentencing] hearing." ' " (*People v. Pittman*, *supra*, 96 Cal.App.5th at p. 416.) The court noted the order was issued in December 2020, but the relevant appellate cases were not decided until 2021 or later. (*Ibid.*)

In this case, the order denying defendant's petition for resentencing was issued in September 2023, well after the issuance of the *Pittman* decision. We presume the trial court followed the law and took into consideration defendant's youth despite not making an express comment on the topic. (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 398.) Defendant has failed to rebut this presumption.[5]

### III. The Alleged Lack of Sufficient Evidence Supporting the Conclusion Defendant was a Direct Aider and Abettor

Finally, defendant argues the evidence does not support the trial court's conclusion he committed second degree murder as a direct aider and abettor. Our review of the entire record convinces this court substantial evidence supports the findings made by the trial court, using the appropriate standard of review, that defendant was guilty of

---

[5] While his youth was not specifically raised as a reason his petition for resentencing should be granted, we recognize that at the end of the hearing held on August 8, 2023, defendant was given the opportunity to create a record that could be relevant to a future *Franklin* hearing. During a *Franklin* hearing, defendant's youth at the time the crime was committed is addressed. (See *People v. Franklin*, *supra*, 63 Cal.4th 261.)

second degree murder beyond a reasonable doubt, as a direct aider and abettor, with a specific intent to kill.  (See § 189, subd. (e)(2).)

Following "the denial of a section 1172.6 petition after an evidentiary hearing, we review the superior court's factual findings for substantial evidence and the court's application of the law to those facts de novo."  (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1066.)  We review the entire record in the light most favorable to the findings made by the trial court, and "we presume ' " 'every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence.' " ' "  (*Ibid*.)  We then "ask 'whether substantial evidence, defined as reasonable and credible evidence of solid value, has been disclosed, permitting the trier of fact to find guilt beyond a reasonable doubt.' "  (*Ibid*.)  We conclude the findings made by the trial court satisfy this standard of review.

## **DISPOSITION**

The order denying defendant's section 1172.6 petition requesting resentencing is affirmed.